UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
CANUTE FLO and KLA THOMPSON, on behalf :
of themselves and all other persons similarly situated,:
                                       :
                 Plaintiffs,        :    **REPORT & RECOMMENDATION**
                                         :
-against-                                :    20-CV-02506 (RPK)(PK)
                                         :
CAMPOS GROUP, INC., LIMIONA, INC.,     :
KAMARI GROUP INC., CHRIS                :
TSAMBOUNIARIS, and JOHN DOES #1-10,   :
                                         :
                Defendants.      :
-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

       On June 4, 2020, Plaintiffs Canute Flo ("Flo") and Kla Thompson ("Thompson," and

collectively, "Plaintiffs") commenced an action against Campos Group, Inc., Limiona, Inc., Kamari

Group Inc. (collectively, "Corporate Defendants"), Chris Tsambouniaris, and John Does #1-10 for

violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the

New York Wage Theft Prevention Act.[1] (*See* "Compl.," Dkt. 1.)

       Before the undersigned on referral from the Honorable Rachel P. Kovner is Plaintiffs' Motion

for Default Judgment against the Corporate Defendants. ("Motion," Dkt. 13.) For the reasons stated

herein, the undersigned respectfully recommends that the Motion be granted.

<h2 style="text-align:center">FACTUAL AND PROCEDURAL BACKGROUND</h2>

       The following facts are taken from the Complaint, the Declaration of David Stein, Esq. ("Stein

Decl.," Dkt. 14), the Declaration of Canute Flo ("Flo Decl.," Dkt. 16-2), and the Declaration of Kla

Thompson ("Thompson Decl.," Dkt. 16-3) and are accepted as true for purposes of the Motion. *See*

---

[1] Although the action included collective action and class action allegations and claims, Plaintiffs did not seek
to certify a collective or a class.

*Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

## I.   Factual History

### A.   Defendants

Defendant Campos Group, Inc., is a New York corporation with a registered address of 54-41 Arnold Avenue, Maspeth, New York.  Defendants Limiona, Inc. and Kamari Group Inc. are also New York corporations with a registered address of 82-07 7th Avenue, Brooklyn, New York.  (Compl. ¶¶ 6-8.)  The three Corporate Defendants share common ownership and management including common offices and personnel and operate for a common business purpose.  (*Id.* ¶ 12.)  Chris Tsambouniaris[2] is an owner or part owner and principal of the Corporate Defendants and was involved in day-to-day operations with "the power to hire and fire employees, set wages and schedules, and maintain their records."  (*Id.* ¶¶ 17-18.)

### B.   Facts Common to Both Plaintiffs

Plaintiffs worked Monday through Saturday on numerous construction projects in the New York City area, including in the Eastern District of New York.  (Compl. ¶¶ 37, 42; Flo Decl. ¶ 10; Thompson Decl. ¶ 10.)  Plaintiffs were paid by the day.  (Compl. ¶ 46; Flo Decl. ¶ 13; Thompson Decl. ¶ 14.)  Plaintiffs were not paid overtime for weeks in which they worked more than 40 hours. (Compl. ¶¶ 49-50; Flo Decl. ¶¶ 15-16; Thompson Decl. ¶¶ 17-18.)

The Corporate Defendants did not provide a timeclock or any other time tracking method, except for at one job in the Bronx.  (Compl. ¶ 45; Flo Decl. ¶ 12; Thompson Decl. ¶ 13.)  Plaintiffs

---

[2] Plaintiffs were unable to serve Chris Tsambouniaris and have stated they will voluntarily dismiss their claims against him without prejudice pursuant to Fed. R. Civ. P. (a)(1)(A)(i).  (Stein Decl. ¶ 8; "Mem. Of Law," Dkt. 15 at n.1.)  Plaintiffs are also not seeking default judgment against Defendants John Does #1-10, who have not been served or mentioned in the Motion or in any of the supporting documentation.  (*See* Dkt. 13; Dkt. 14; Dkt. 15.)

do not have copies of any records Corporate Defendants may have kept.  (Flo Decl. ¶ 11; Thompson Decl. ¶ 11.)

Throughout their period of employment, Plaintiffs were paid by business checks, which were not accompanied by pay stubs or wage statements indicating their hours worked or rates of pay. (Compl. ¶¶ 53-54; Flo Decl. ¶ 14; Thompson Decl. ¶ 15.)  Although Plaintiffs "did the same work, supervised by the same people, at the same job sites," the checks they received were sometimes issued by Campos Group, Inc., sometimes by Limiona, Inc., and sometimes by Kamari Group Inc.  (Flo Decl. ¶ 9; Thompson Decl. ¶ 9.)

When hired, Plaintiffs were not provided with written notices providing the employer's contact information, Plaintiffs' regular and overtime rates of pay, or other information required by the Wage Theft Prevention Act.  (Compl. ¶ 56; Flo Decl. ¶ 17; Thompson Decl. ¶ 19.)

### C.    Plaintiff Canute Flo

Plaintiff Flo was employed by Campos Group, Inc. as a plasterer from 2012 to 2013 then again from January 2015 through July 2017.  (Compl. ¶ 38; Flo Decl. ¶¶ 6, 8.)  Flo worked at "various job sites around New York City, including Staten Island, the Bronx, Queens, and occasionally Manhattan." (Flo Decl. ¶ 7.)  He worked a regular schedule of six eight-hour workdays each week, resulting in 48-hour workweeks.  (Compl. ¶¶ 42-43; Flo Decl. ¶¶ 10-11.)

Flo initially received $170 per day.  (Flo Decl. ¶ 13.)  In 2015 and 2016, Flo was paid $180 a day, and in 2017 he received a raise to $190 per day.  (Compl. ¶ 47; Flo Decl. ¶ 13.)

Flo was never paid overtime.  (Compl. ¶ 50; Flo Decl. ¶¶ 15-16.)  Flo requested overtime pay from his boss "John," but was informed that the company could not afford to pay him overtime. (Compl. ¶ 52; Flo Decl. ¶ 16.)

### D.    Plaintiff Kla Thompson

Plaintiff Kla Thompson was employed by Campos Group Inc. as a laborer and carpenter and

3

worked from approximately August 2013 through mid-June 2017.  (Compl. ¶ 39; Thompson Decl. ¶¶ 6, 8.)  Thompson worked at "various job sites around New York City, including Staten Island, the Bronx and Queens."  (Thompson Decl. ¶ 7.)  He generally worked a regular schedule from 7:00 a.m. to 5:30 p.m. daily, with a half-hour break, six days a week.  (Thompson Decl. ¶¶ 10-12; *see* Compl. ¶ 44.)  Thompson worked sixty hours per week.  (Thompson Decl. ¶ 12; Compl. ¶ 44.)  Occasionally, Thompson worked later than 5:30 p.m.  (Thompson Decl. ¶ 11.)

Thompson was initially paid $100 per day but received a raise to $120 per day in 2015.  (Compl. ¶ 48; Thompson Decl. ¶ 14.)  Thompson did not receive overtime pay.  (Compl. ¶ 49; Thompson Decl. ¶ 17.)  Thompson states in his declaration that he "did ask about overtime pay, but all they ever told me was 'We'll see,' and they never actually changed how they paid me."  (Thompson Decl. ¶ 18.)

## II.    <u>Procedural Background</u>

Plaintiffs filed the Complaint on June 4, 2020.  (*See* Compl.)  Plaintiffs assert three causes of action: (1) FLSA unpaid overtime wages; (2) NYLL back pay for unpaid overtime; and (3) violations of the Wage Theft Prevention Act.  (*Id.* ¶¶ 1-2, 63-79.)

Plaintiffs served the Corporate Defendants via the Secretary of State on July 2, 2020.  (Dkts. 6-8.)  They were unable to effectuate service on Tsambouniaris.  (Stein Decl. ¶ 8.)

On September 24, 2020, Plaintiffs requested a Certificate of Default against the Corporate Defendants (Dkt. 9), and the Clerk of Court entered default on October 1, 2020 (Dkt. 10).

Plaintiffs moved for default judgment on January 22, 2021 and submitted the Stein Declaration, a copy of the Complaint (Dkt. 14-1), affidavits of service (Dkt. 14-2), the Clerk's Certificate of Default (Dk.t 14-3), the unsigned declaration of Flo (Dkt. 14-4), the unsigned declaration of Thompson (Dkt. 14-5), Flo's damages spreadsheet (Dkt. 14-6), Thompson's damages spreadsheet (Dkt. 14-7), attorney time records (Dkt 14-8), expense receipts (Dkt. 14-9) and a memorandum of law (Dkt. 15) in support of their Motion.  Plaintiffs sent the Motion and supporting documents to the

Corporate Defendants by first class mail on January 22, 2021. (Dkt. 13.)

On September 1, 2021, the undersigned issued an Order to Show Cause why Plaintiffs' demand for prejudgment interest in the Complaint should not be deemed abandoned for failure to include it in the Motion, and directed Plaintiffs to provide signed copies of their affidavits and supplemental documents showing the cost of service of process. (Order dated Sept. 1, 2021.) Plaintiffs filed a response and submitted the signed declarations. (Dkts. 16, 17.)

## III.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Cap. Com. Grp, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor."

*Finkel*, 577 F.3d at 84.  However, a default is "not considered an admission of damages."  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.  "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits."  *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established ...." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## IV.     Jurisdiction

### A.     Subject Matter Jurisdiction

The court has original jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### B.     Service on Defendants

Plaintiffs properly served each of the Corporate Defendants by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State.  *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B).  (Dkt. 6 and Dkt. 14-2, Ex. B (Campos Group, Inc.); Dkt. 7 and Dkt. 14-2, Ex. B (Kamari Group Inc.); Dkt. 8 and Dkt. 14-2, Ex. B (Limiona, Inc.))

Service on all Corporate Defendants was therefore proper.

### C.     Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).  New York State has general jurisdiction over corporations formed under its laws and

operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).

The Corporate Defendants were formed under New York State laws and operate within the state, and all three of the Corporate Defendants have a registered address within the state of New York. (Compl. ¶¶ 6-8.) The Corporate Defendants are engaged in construction projects around New York State, including Queens, the Bronx, Manhattan, and Staten Island. (*Id.* ¶ 37.) The Court therefore has personal jurisdiction over the Corporate Defendants.

## V.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

In compliance with Local Civil Rule 7.1, Plaintiffs filed the following documents in support of the Motion: Notice of Motion (Dkt. 13); Memorandum of Law (Mem. of Law, Dkt. 15), supporting affidavits, declarations, and exhibits (Stein Decl.; Flo. Decl.; Thompson Decl.; Dkts. 14-6, 14-7, 14-8, 14-9).

In compliance with Local Civil Rule 55.2(b), Plaintiffs included the Clerk's Certificate of Default (Dkt. 14-3, Ex. C), a copy of the Complaint (Dkt. 14-1, Ex. A), and a proposed form of default judgment (Dkt. 13-1). Plaintiffs mailed by first class mail all papers submitted to the Court to the last known business address of the Corporate Defendants and have filed proof of such mailing. (Dkt. 13 at 2, Dkt. 17.)

## VI.    Liability under the FLSA and NYLL

### A.    Statute of Limitations

The FLSA and the NYLL have different statutes of limitations. The statute of limitations for FLSA claims is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies." *Rodriquez v. Queens Convenience Deli Corp.*, No. 9-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2

(E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 9-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)).  "The statute of limitations starts to run when the employee begins to work for the employer." *Id.* The NYLL statute of limitations is six years. NYLL §§ 198(3), 663(3).

Plaintiffs commenced this action on June 4, 2020.  (*See* Compl.)  Because the Corporate Defendants have defaulted, the overtime violations are willful and the three-year FLSA statute of limitations applies.  Plaintiffs can recover under the FLSA for any claims that accrued starting on June 4, 2017.  Under the six-year NYLL statute of limitations, Plaintiffs may recover for any claims that accrued starting on June 4, 2014.

### B.    Employment Relationship Under the FLSA

The FLSA is to be "construed [ ] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted).  To plead a cause of action under the FLSA, plaintiffs must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiffs are employees within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-cv-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted,* 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).  Courts in the Second Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

#### 1.    *Whether the Corporate Defendants are Employers*

The FLSA broadly describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term

"'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 104 (quoting *Barfield*, 537 F.3d at 142). "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations." *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT)(RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R&R adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

a)   *Whether the Corporate Defendants are Joint Employers*

Plaintiffs argue that the Corporate Defendants are joint employers and constitute a single "enterprise." (Compl. ¶¶ 12-16.)   Courts use two alternative tests to assess whether separate defendants acting in concert may be jointly liable for violations of labor laws: the "single integrated enterprise test;" or the "joint employer test." *See Galicia v. Ice Cream House on Bedford Ave. LLC*, No. 16-CV-6738 (CBA)(PK), 2017 WL 6733985, at *2 (E.D.N.Y. Oct. 17, 2017), *R&R adopted*, 2017 WL 6759299 (E.D.N.Y. Dec. 29, 2017).

The single integrated enterprise test "assesses whether nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." *Galicia*, 2017 WL 6733985, at *2 (quotation and citation omitted).   Under the single integrated enterprise test, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Apolinar v. R.J. 49 Rest., LLC*, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (quotation and citation omitted).

The joint employer test is "based on the circumstances of the whole [employment] activity viewed in light of the economic reality." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003) (alteration added).   Courts often rely on the four-factor "economic realities" analysis, which "ask[s]

9

whether multiple employers together '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Galicia*, 2017 WL 6733985, at *2 (quoting *Mendez v. Pure Foods Mgmt. Grp., Inc.*, 14-CV-1515 (SRU), 2016 WL 183473, at *3 (D. Conn. Jan. 14, 2016)). Although the economic realities test "has been distilled into a nonexclusive and overlapping set of factors," courts must look "beyond a defendant's formal control over the physical performance of plaintiff's work" and consider the "broad … language in the statute." *See Zheng*, 335 F.3d at 75-76.

The Corporate Defendants are joint employers under either test. The Corporate Defendants "shared common ownership and management, common offices and personnel, and operated for a common business purpose." (Compl. ¶ 12.) Chris Tsambouniaris is an owner or part owner and principle of all three Corporate Defendants, and possessed the power to hire and fire employees, set wages and schedules, and maintain records. (*Id.* ¶ 17.) Plaintiffs' weekly paychecks were sometimes issued "by Campos Group, sometimes by … Kamari Group, Inc., and sometimes by… Kamari Group, Inc." (Flo Decl. ¶ 9; Thompson Decl. ¶ 9.) Plaintiffs were supervised by the same individuals on various job sites. (Flo Decl. ¶ 9; Thompson Decl. ¶ 9.) Kamari Group Inc. and Limiona, Inc. both also have a registered address of 8207 7th Avenue Brooklyn, New York. (Compl. ¶¶ 7-8.) The Corporate Defendants therefore are joint employers under either the single integrated enterprise or joint employer test.

b)    *Whether the Corporate Defendants are FLSA Employers*

A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage. *See Rowe*, 2019 WL 4395158, at *4. The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that

have been moved in or produced for commerce by any person; and ... whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may meet this standard if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). The individual coverage test considers "the employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Rowe,* 2019 WL 4395158, at *4.

The Complaint alleges that the Corporate Defendants "at relevant times … individually and collectively, have had gross annual revenues in excess of $500,000" and "have used goods and materials produced in interstate commerce, and have employed at least two individuals who handled such goods and materials." (Compl. ¶¶ 10-11.) Although these allegations merely repeat the statutory elements, they are sufficient to establish liability. *Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD)(JO), 2012 WL 1107655, *2 (E.D.N.Y. Mar. 30, 2012) (stating that a court can "infer[ ] the requisite interstate commerce connection under [a] sensible approach"). Accordingly, the enterprise coverage test is satisfied, and the Corporate Defendants are employers within the meaning of the FLSA. *See Wing Kwong Ho v. Target Const. of NY, Corp.*, No. 08-CV-4750 (KAM)(RER), 2011 WL 1131510, at *8 (E.D.N.Y. Mar. 28, 2011) (because plaintiff used tools and construction materials "undoubtedly traveled in interstate commerce," plaintiff satisfied enterprise coverage test).

2.    *Whether Plaintiffs are Employees*

An "employee" under the FLSA is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In addition to the allegations in the Complaint that Plaintiffs were

employees (*see, e.g.*, Compl. ¶ 41), Plaintiffs have provided declarations stating that they were employees of Campos Group, Inc.   (Flo Decl. ¶ 5; Thompson Decl. ¶ 5.)   Plaintiffs are thus "employees" under the FLSA.

> 3.     *Whether the Employment Relationship is Exempt from the FLSA*

Section 13 of "the FLSA contains a litany of exemptions." *Fermin*, 93 F. Supp. 3d at 32.; *see* 29 U.S.C. § 213.  These include "bona fide executive, administrative, or professional" employees, "outside salesmen," certain seasonal employees, some employees in fishing, agriculture, and small local newspaper employees, among many others.  *See* 29 U.S.C. § 213.  An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).

None of the FLSA's exceptions apply to either Plaintiff.  Flo was employed as a plasterer (Flo Decl. ¶ 6) and Thompson as a laborer and carpenter (Thompson Decl. ¶ 6).  Such employment is not exempt from FLSA coverage.  *See, e.g.*, *McBeth*, 768 F. Supp. 2d at 387; *see also Vega v. K&C Interior Constr. Corp.*, No. 18-CV-00182, 2018 WL 4376486, at *3 (E.D.N.Y. Aug. 28, 2018), *R&R adopted*, 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018) (FLSA exemptions do not include carpenters).

## C.    Employment Relationship Under the NYLL

To prevail on a NYLL claim, Plaintiffs must establish that their employment relationship with the Corporate Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment."  NYLL § 190.  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014).  Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016),

*R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Fermin*, 93 F. Supp. 3d at 37, the Corporate Defendants are Plaintiffs' employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.    Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); see also NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2). To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the forty hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201. *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week without overtime pay established an overtime claim).

Flo worked a "regular schedule" from 8:00 a.m. to 4:00 p.m. six days a week, or forty-eight hours per week. (Flo Decl. ¶¶ 10-11). Flo alleged that he was not paid "anything extra for overtime work." (*Id.* ¶ 15.) He requested overtime pay but was informed that the company could not afford to pay him overtime. (*Id.* ¶ 16.)

Thompson worked a "regular schedule," from 7:00am to 5:30 pm six days a week with a half-hour break each day, for sixty hours a week. (Thompson Decl. ¶¶ 10-12.) He was never paid more for hours worked over forty hours. (*Id.* ¶ 17.) Thompson also asked about overtime pay, but was told, "We'll see," and never received overtime pay. (*Id.* ¶ 18.)

These allegations establish the Corporate Defendants' liability for failure to pay Plaintiffs overtime under both the FLSA and NYLL. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over forty hours a week without time-and-a-half compensation, subjecting defendants to liability under FLSA and NYLL).

### E.    Wage Notice Claims

Plaintiffs alleged violations of NYLL § 195(1), the statute's wage notice provision.  (Compl. ¶¶ 74-79.)  Throughout the period covered by the Complaint, Section 195(1) required wage notices containing, *inter alia*, information about an employee's rate of pay, the name of the employer, and other information.  *See* NYLL § 195(1)(a).  Prior to December 29, 2014, Section 195(1) required such notices at the time of hire and on the first of every February.  2010 Sess. L. News of N.Y. Ch. 564 (S. 8380); *see also* NYLL § 195(1)(a), *effective* Apr. 9, 2011-Dec. 28, 2014.  On and after December 29, 2014, Section 195(1) only required such notice at the time of hire.  *See* 2014 Sess. L. News of N.Y. Ch. 537 (A. 8106-C); NYLL § 195(1)(a) *effective* Dec. 29, 2014 to June 22, 2020.

#### 1.    *Plaintiff Flo*

Flo's first period of employment with Corporate Defendants, from 2012 to 2013, is outside the statute of limitations.  However, when Flo was re-hired in January 2015, he was entitled to a new wage notice.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *20 (E.D.N.Y. Sept. 22, 2017) (plaintiff employed from April 2003 through November 2014 and again from March 2016 until April 2016 entitled to new wage notice under revised § 195(1).)  Flo never received a wage notice.  (Compl. ¶ 56; Flo Decl. ¶¶ 17-18.)

Corporate Defendants' failure to provide a wage notice to Flo upon rehiring therefore subjects them to liability under Section 195(1).

2.    *Plaintiff Thompson*

Thompson began working for Corporate Defendants in August 2013. Because his employment began prior to December 29, 2014, he was entitled to a wage notice upon hiring and on February 1, 2014, but he never received any such notice. (*See* Compl. ¶ 56; Thompson Decl. ¶ 19.) Because these violations "continue[d] to occur" for each week Thompson was not provided a wage notice, and because the continuing violation occurred within the statute of limitations, Corporate Defendants' failure to provide wage notices to Thompson subjects them to liability under Section 195(1). *See* NYLL § 198(1-b) (effective Apr. 9, 2011) (allowing for recovery "for each work week that the violations [of Section 195(1)] occurred or continue to occur…")

**F.    Wage Statement Claims**

Plaintiffs also alleged violations of NYLL § 195(3), the statute's wage statement provision. (Compl. ¶¶ 74-79.) Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. Unlike Section 195(1), the language and requirements of Section 195(3) remained the same throughout the period covered by the Complaint.

Plaintiffs allege that they never received wage statements while employed by the Corporate Defendants. (Compl. ¶¶ 74-79; Flo Decl. ¶ 14; Thompson Decl. ¶ 15.) The Corporate Defendants therefore violated NYLL § 195(3) as to both Plaintiffs.

**VII.    Damages**

**A.    Overtime**

Both the NYLL and the FLSA provide for overtime pay at one and one-half times the employee's "regular rate of pay." *Nakahata*, 723 F.3d at 200. Pursuant to the FLSA, the "regular rate of pay" is computed by "dividing the [Plaintiff's] salary by the number of hours which the salary is

intended to compensate." *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (quoting 29 C.F.R. § 778.113). Pursuant to NYLL regulations, the "regular rate" for non-hospitality industry workers[3] paid other than hourly is the worker's total weekly salary divided by the number of hours worked. 12 N.Y.C.R.R. § 142-2.16.

In light of the principle that "the law providing the greatest recovery will govern," Plaintiffs may be awarded overtime damages pursuant to the NYLL or the FLSA. *See Charvac v. M&T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted). Plaintiffs have elected to recover under the NYLL, which provides for the greater recovery here. (*See* Mem. of Law at 5; Exs. F and G to the Stein Decl., Dkts. 14-6 and 14-7.)

Plaintiffs' regular rates are calculated by multiplying their daily pay by the number of days worked each week and then dividing by the number of hours worked each week. Because Plaintiffs received the same effective hourly rate for all hours worked, including hours over 40, they have only been underpaid by the overtime premium. Plaintiffs' unpaid overtime is therefore the unpaid overtime premium times the number of overtime hours worked each week multiplied by the number of weeks worked, as set forth in the tables that follow:

| Plaintiff Flo's Overtime Damages | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Time Period | Hours Per Week | No. of Weeks | Weekly Pay | Regular Hourly Rate (Weekly Pay / Hours Per Week) | Overtime Hours Per Week | Overtime Premium (0.5 x Regular Hourly Rate) | Weekly Overtime Underpayments (Overtime Premium x Overtime Hours) | Total Overtime Underpayments (Weekly Overtime Underpayment x Number of Weeks) |
| Jan. 1, 2015 - Dec. 31, 2016 | 48 | 104 | $1,080 | $22.50 | 8 | $11.25 | $90.00 | $9,360.00 |
| Jan 1, 2017 - July 31, 2017 | 48 | 30 | $1,140 | $23.75 | 8 | $11.88 | $95.00 | $2,850.00 |
| | | | | | | | **Total:** | $12,210.00 |

---

[3] Plaintiffs were not employed in the hospitality industry. *See* 12 N.Y.C.R.R. § 146-3.1 ("The term hospitality industry includes any restaurant or hotel…").

| | | | | | | **Plaintiff Thompson's Overtime Damages** | | |
|---|---|---|---|---|---|---|---|---|
| Time Period | Hours Per Week | No. of Weeks | Weekly Pay | Regular Hourly Rate (Weekly Pay / Hours Per Week) | Overtime Hours Per Week | Overtime Premium (0.5 x Regular Hourly Rate) | Weekly Overtime Underpayments (Overtime Premium x Overtime Hours) | Total Overtime Underpayments (Weekly Overtime Underpayment x Number of Weeks) |
| June 4, 2014 - Dec. 31, 2014 | 60 | 30 | $600 | $10.00 | 20 | $5.00 | $100.00 | $3,000.00 |
| Jan. 1, 2014 - Jun. 15, 2017 | 60 | 128 | $720 | $12.00 | 20 | $6.00 | $120.00 | $15,360.00 |
| | | | | | | | **Total:** | $18,360.00 |

Accordingly, the undersigned respectfully recommends that Flo be awarded **$12,210.00** and Thompson be awarded **$18,360.00** in unpaid overtime.

### B.    Wage Notice and Wage Statement Damages

Plaintiffs seek damages for Corporate Defendants' violations of NYLL §§ 195(1) and 195(3).

#### 1.    *Wage Notice Damages*

Under the version of NYLL § 198(1-b) currently in effect, employees are entitled to $50 per workday for violations of NYLL § 195(1), up to a maximum of $5,000. Prior to February 27, 2015, however, Section 198(1-b) provided for damages of $50 per workweek up to a statutory maximum of $2,500. *See* NYLL § 198(1-b) (effective Apr. 9, 2011). The increase to the statutory maximum is not retroactive. *See* NYLL § 198(1-b) (effective Feb. 27, 2015); *see also Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *21 (E.D.N.Y. Sept. 22, 2017) *R&R adopted*, Dkt. Order Oct. 18, 2017 (concluding that the increase in damages under Section 198(1-b) is not retroactive and applying lower statutory threshold to employee hired before February 27, 2015).

Because Flo began working for Corporate Defendants in January 2015 and Thompson began working in August 2013, the earlier version of Section 198(1-b) applies to both Plaintiffs. (*See* Flo Decl. ¶ 8; Thompson Decl. ¶ 8.) Therefore, Plaintiffs are only eligible for the statutory maximum of $2,500 for the wage notice violations.

Both Plaintiffs worked for Corporate Defendants more than 50 weeks, accruing the maximum amount in statutory damages. Accordingly, the undersigned respectfully recommends that Plaintiffs each be awarded **$2,500** in damages under Section 195(1).

2.    *Wage Statement Damages*

As of February 27, 2015, violations of NYLL § 195(3) incur damages of $250 per workday, for a maximum of $5,000, along with costs and attorney's fees. NYLL § 198(1-d). Plaintiffs began working for Corporate Defendants before that date, when the maximum amount was lower. However, because a new wage statement violation occurs every pay period in which proper wage statements are not provided to an employee, Plaintiffs' allegations also include violations that occurred after February 27, 2015. *See* NYLL § 195(3) (employers must "furnish each employee with a statement with *every* payment of wages…") (emphasis added).

Plaintiffs worked for Corporate Defendants for more than twenty days after February 27, 2015 and did not receive wage statements during that time. Therefore, they are entitled to the statutory limit of $5,000. *See Martinez*, 2017 WL 5033650, at *21-22 (awarding wage statement damages under revised statute where employment continued after statutory revision and plaintiff did not receive paystubs).

Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded **$5,000** in damages under Section 195(3).

**C.    Liquidated Damages**

Plaintiffs seek liquidated damages equal to 100% of the total amount of overtime wages owed. (Dkt. 14-6, 14-7). Under the FLSA and the NYLL, an employee may be entitled to recover liquidated damages equal to the amount owed for unpaid overtime. 29 U.S.C. § 216(b); NYLL § 198(1-a). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL,

a court may decide not to award liquidated damages. 29 US.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages). Both Plaintiffs presented evidence that Corporate Defendants were aware of their overtime obligations but failed to or refused to pay overtime. (Compl. ¶ 52; Flo Decl. ¶ 16; Thompson Decl. ¶ 18.) Since the Corporate Defendants have defaulted and did not respond to the Motion, there is also no showing of good faith, and liquidated damages are appropriate. *See Herrara v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at \*12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA. *See Rama v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Plaintiffs have elected to receive liquidated damages under the NYLL because it provides a higher recovery. *See Charvac*, 2015 WL 5475531, at \*4.

Accordingly, the undersigned respectfully recommends that Plaintiff Flo be awarded liquidated damages of **$12,210.00** and Plaintiff Thompson be awarded liquidated damages of **$18,360.00** under the NYLL.

### D.    Prejudgment and Post-Judgment Interest

Although Plaintiffs requested prejudgment and post-judgment interest in the Complaint, they failed to renew the request for such relief in the Motion. (*See* Compl. at 17; Motion, Mem. of Law.) In response to an order to show cause, Plaintiffs expressly waived any demand for prejudgment interest. (Dkt. 16.)

Post-judgment interest is mandatory. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see* 28 U.S.C. § 1961(a) (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield ... for the calendar week preceding the date of judgment."); *Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354

(ILG)(VMS), 2021 WL 2188280, at *18 (E.D.N.Y. Feb. 12, 2021), *R&R adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021) (awarding post-judgment interest despite plaintiff's failure to request it). Accordingly, the undersigned respectfully recommends that Plaintiffs be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### E.      Fifteen Percent Increase Penalty if Damages not Paid Within Ninety Days

Plaintiffs do not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for at NYLL § 198(4). However, that provision mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). This award is therefore mandatory, regardless of whether Plaintiffs requested it or not.

The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL). Accordingly, Plaintiffs' damages under the NYLL should be increased by fifteen percent if the Corporate Defendants fail to timely satisfy the judgment.

### F.      Joint and Several Liability

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37.

The Corporate Defendants were Plaintiffs' joint employers. Therefore, they are jointly and severally liable for their violations of the FLSA and NYLL.

### G.    Attorneys' Fees and Costs

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Plaintiffs request **$5,157.50** in attorneys' fees and **$721.60** in costs. (Mem. of Law at 8.)

### 1.    *Attorneys' Fees*

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request. *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). "If the Court finds that some of the

time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). "Inadequate documentation" is another "ground[ ] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

### a)     Hourly Rate

Plaintiffs seek fees for the work done by their counsel, David Stein and David Nieporent. Plaintiffs seek $375 per hour for Stein. Stein was admitted to the New York bar in 2000 and is a founding partner of Samuel & Stein. (Stein Decl. ¶ 19.) He has "focused [his] practice almost exclusively on wage-and-hour cases since 2008," handling "more than 350 such cases" and trying several cases to verdict. *Id.* Stein elected to charge $125 per hour for tasks that he performed but "that did not require the expertise of a senior partner." (*Id.* ¶ 21.)

Plaintiffs seek $325 per hour for Nieporent. Nieporent is a senior associate at Samuel & Stein with over 20 years' experience and has been a member of the New York bar since 2011. (*Id.* ¶ 20.) "Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court." (*Id.*)

Some courts have held that the appropriate range for a senior attorney in a labor law case is $300 to $400 per hour, while others have found that $450 is the proper upper limit of the range. *See Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020). The undersigned finds that Stein's requested $375 per hour is a reasonable rate for an attorney with similar experience to Stein in a routine FLSA default judgment case. *See, Lopez v. Ki Moon Rest.*

22

*Corp.*, No. 17-CV-6078 (LDH)(RLM), 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *R&R adopted*, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021) (awarding $400 per hour because "Mr. Stein has the requisite experience in this area of the law to justify the higher rate, having handled more than 350 federal wage-and-hour cases and having practiced law for approximately thirty years"). Mr. Stein's reduced rate of $125 per hour for administrative tasks is also reasonable. *See id.* at *3 n.2.

Additionally, given Nieporent's "experience, *i.e.*, skill and expertise," the undersigned finds that $325 per hour is a reasonable rate. *Id.* at *3 ("Regardless of his title, Mr. Nieporent has experience comparable to other attorneys who have been awarded hourly rates above $325 per hour.") (citing cases).

Accordingly, Plaintiffs' requested rates are reasonable.

> b)      *Reasonableness of Time Billed*

Plaintiffs' counsel seeks reimbursement for 15.7 hours of work, including 2.3 hours by Stein at his partner rate of $375, .3 hours by Stein at his reduced rate of $125, and 13.1 hours by Nieporent at his regular rate. (Stein Decl. ¶ 23; "Billing Records," Ex. H to the Stein Decl., Dkt. 14-8.) The undersigned has reviewed the Billing Records and finds them to be reasonable.

> c)      *Calculating the Recommended Fee Award*

As set forth in the chart below, the undersigned calculates the recommended fee award as follows:

| Biller | Rate | Time | Total |
|---|---|---|---|
| David Stein | $375 | 2.3 | $862.50 |
| | $125 | 0.3 | $37.50 |
| David Nieporent. | $325 | 13.1 | $4,257.50 |
| | | **Total** | $5,157.50 |

Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded **$5,157.50** in attorney's fees.

2.    *Costs*

Plaintiffs seek $721.60 in costs, comprised of $400.00 for filing the Complaint and $321.60 for service of process. ("Costs," Ex. I to the Stein Decl., Dkt. 14-9.)

The undersigned takes judicial notice of the filing fee. *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it). Plaintiffs submitted invoices to support their requested service costs, which are reasonable. (Dkt. 14-9 at 3-5; Dkt. 16-1.)

Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded **$721.60** in costs.

## **CONCLUSION**

For the foregoing reasons, the undersigned respectfully recommends that the Motion be granted and that Campos Group, Inc., Limiona, Inc., and Kamari Group Inc. be found jointly and severally liable for failing to pay Plaintiffs overtime wages for hours worked over forty per week and failing to provide Plaintiffs with pay stubs or wage notices. The undersigned respectfully recommends that damages be awarded as follows:

- **Plaintiff Flo:**

  o $12,210 in unpaid overtime;

  o $2,500 for failure to provide wage notices;

  o $5,000 for failure to provide wage statements;

  o $12,210 in liquidated damages;

- **Plaintiff Thompson:**

  o $18,360 in unpaid overtime;

  o $2,500 for failure to provide wage notices;

  o $5,000 for failure to provide wage statements;

o $18,360 in liquidated damages;

The undersigned respectfully recommends that Plaintiffs be awarded $5,157.50 in attorneys' fees and $721.60 in costs. The undersigned further respectfully recommends that Plaintiffs be granted post-judgment interest at the statutory rate, and the fifteen-percent increase penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants forthwith, and file proof of service on the docket by **September 13, 2021**. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          September 10, 2021

25